IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-00718-D

| | | |
|---|---|---|
| ARLENA LEE MARTIN, | ) | |
| | ) | |
| Plaintiff/Claimant, | ) | |
| | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-29, DE-34] pursuant to Fed. R. Civ. P. 12(c). Claimant Arlena Lee Martin ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. Claimant responded to Defendant's motion [DE-43] and the time for filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB, and SSI on December 8, 2010, alleging disability beginning May 22, 2010. (R. 21, 204-12, 214-23). Both claims were denied initially and upon reconsideration. (R. 21, 88-155). A hearing before

Administrative Law Judge Lisa R. Hall ("ALJ") was held on September 5, 2012, at which Claimant was represented by counsel and a witness and a vocational expert ("VE") appeared and testified. (R. 38-87). At the hearing, Claimant amended her onset date to July 1, 2009. (R. 21, 238-39). On January 14, 2013, the ALJ issued a decision denying Claimant's request for benefits. (R. 18-37). On May 24, 2013, the Appeals Council denied Claimant's request for review. (R. 9-11). On August 19, 2013, the Appeals Council set aside its earlier action and considered additional evidence submitted by Claimant. (R. 299-337, 824-32). After reviewing and incorporating some of the additional evidence into the record, the Appeals Council again denied Claimant's request for review.[1] [DE-30-7]. Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount

---

[1] The second Appeals Council denial appears to have been omitted from the administrative record in error, but was attached to Claimant's memorandum in support of her motion for judgment on the pleadings [DE-30-7]. Claimant also attaches several exhibits she claims were submitted to the Appeals Council but were not incorporated into the record. [DE-30-1 to -8].

2

of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This

3

regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges that the ALJ erred by: (1) improperly weighing the medical opinion evidence, (2) failing to apply the Medical Vocational Guidelines (the "Grids"), (3) improperly evaluating Claimant's credibility, (4) determining that Claimant could perform her past relevant work, and (5) substituting her own opinion for that of a medical expert.[2] Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings [DE-30] ("Pl.'s Mem.") at 15-30. Claimant also alleges that the Appeals Council erred by failing to consider new and material evidence. *Id.*

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 23). Next, the ALJ determined Claimant had the following severe impairments: degenerative joint disease of the knee and shoulder, chronic obstructive

---

[2] Claimant also briefly alleges that her impairments meet Listings 12.04, Affective Disorders; 12.06 Anxiety Disorders; and 1.02, Dysfunction of a Major Joint, and that her medical impairments meet or equal the listings when all of her medical impairments are considered in combination. Pl.'s Mem. at 2. However, Claimant makes no specific assertions as to how the ALJ erred with respect to the listings and does not address in detail how her impairments meet a listing. Accordingly, Claimant has not met her burden of showing that her condition meets a listing. *Carmona v. Colvin*, No. 4:13-CV-00102-D, 2014 WL 4386131, at *6 (E.D.N.C. Aug. 18, 2014) (unpublished) ("where a claimant fails to articulate why her medical impairments do, in fact, meet all of the elements of a given listed impairment, she fails to meet her burden") (internal quotations & citations omitted).

4

pulmonary disease ("COPD"), anxiety, and depression. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate limitations in her activities of daily living, social functioning and concentration, persistence and pace with no episodes of decompensation. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[3] with the following limitations: Claimant can sit, stand and walk for up to six hours in an eight-hour work day, occasionally engage in postural activities and reach overhead, and must avoid concentrated exposure to pulmonary irritants. (R. 25). The ALJ also identified the following non-exertional limitations: Claimant is limited to simple, routine, repetitive tasks with occasional interaction with coworkers and supervisors, and cannot maintain sustained interaction with the general public. *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 25-31). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of her past relevant work. (R. 31).

**B.    Claimant's Testimony at the Administrative Hearing**

At the time of Claimant's administrative hearing, Claimant was 55 years old and unemployed, living with her mother. (R. 42). Claimant is a high school graduate who completed

---

[3]  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

a year and a half of technical college. (R. 44). Claimant has been married and divorced four times and has one grown daughter. (R. 43). Claimant was last employed as a case manager assistant with the Whitley, Rodgman and Whitley law firm until August 2008, where her duties included secretarial work, computer data entry, filing, and filling in for the receptionist, and Claimant would occasionally have to lift up to 15 pounds at this job. (R. 45-46). While she worked at the law firm, Claimant had knee problems and stomach issues, and missed about five days of work each month due to illness or medical appointments. (R. 46). Claimant was also experiencing panic attacks, which she tried to hide from her coworkers. (R. 46-47). Claimant testified that she lost her job at the law firm because of absenteeism, but was told she was fired because she was too honest. (R. 47-48). Claimant has also worked as a receptionist doing accounting, invoicing, switchboard operation, and data entry for many different employers, an office manager assistant performing clerical work, and an ultrasonic welder in a fast-paced factory job. (R. 48-54). In these different positions, Claimant usually had to lift between 10 and 15 pounds. *Id.*

Claimant explained numerous medical conditions to support her disability claim and her inability to work full-time. These medical conditions include depression, anxiety, panic attacks, post-traumatic stress disorder ("PTSD"), left knee pain, COPD, cardiac problems, circulation problems, and back pain. (R. 55-68). Claimant believes that she has been unable to work since July 2009 because she cannot be relied on to be at work full-time, she cannot perform lifting that would be required at many jobs, she has to take naps, she cannot stay focused, and she has difficulty expressing herself. (R. 69). Claimant testified that she has had trouble getting along with coworkers, supervisors, and the public in the past, which contributed to the large number of jobs in her work history. (R. 69-70).

6

Claimant has had depression since her childhood, received treatment as a teenager, and was hospitalized at age 17 after a suicide attempt. (R. 55). Claimant is treated weekly by a counselor, and sees a psychiatrist every three months. (R. 56, 59). Claimant testified that she has good days and bad days due to her depression, and on bad days she does not feel like getting out of bed and getting dressed, and has feelings of not being good or smart enough. *Id.* Claimant has lost interest in activities she used to enjoy, such as hiking and bowling. (R. 56-57). Claimant has panic attacks a few times a week, which vary in duration, where it feels like her chest tightens up and she cannot breathe. (R. 57-58). Claimant was diagnosed with PTSD, stemming from childhood issues related to the death of her biological father and living with her stepfather. (R. 58). Claimant was physically and verbally abused during her marriages. *Id.* Claimant testified that she attempted suicide in 2008 by taking several bottles of pills when she was faced with the prospect of moving back in with her mother. (R. 58-59). When Claimant attempted suicide as a teenager, she was labeled as attention-seeking because she only took one bottle of pills. (R. 58). Claimant's mother found her in 2008 during the suicide attempt, but did not take Claimant to the hospital due to embarrassment. (R. 59).

Claimant has interrupted sleep due to knee pain, leg cramps, needing to use the restroom, and trouble breathing, and usually gets four to five hours of sleep a night. (R. 57). In total, Claimant has had six knee surgeries on her left knee, including cartilage removal, arthroscopic surgery, lateral release, and repair for a torn anterior cruciate ligament. (R. 59-60). Claimant cannot stand for long periods of time without her knee swelling, and she often has to elevate her knee. (R. 60). Claimant walks with a limp and has to be careful on stairs and on curbs. *Id.* Between 2008 and 2012, Claimant did not have Medicaid and was being treated at a free clinic in Goldsboro named WATCH mobile, where she did not have access to orthopaedic treatment. (R. 61). Claimant began receiving

7

Medicaid in 2012 and has been able to see a doctor, who is recommending that Claimant be evaluated by an orthopedic surgeon for a knee replacement. (R. 61-62). Claimant is nervous about the recovery following knee-replacement surgery, and is currently treating her knee pain with anti-inflammatory medication, elevation, and ice. (R. 62). Although Claimant does have access to prescription pain medication, she tries not to take it. *Id.* Claimant testified that she has reduced range of motion in her knee, she cannot squat or bend her leg all the way back without pain, she cannot kneel or put pressure on her knee, and she cannot stoop. (R. 62-63).

As a result of Claimant's COPD, Claimant has frequent coughing and chest tightness. (R. 63). Claimant takes Spiriva at night and uses an inhaler during the day when her allergies are triggered and she has shortness of breath. *Id.* Claimant's allergies are triggered by grass, cleaning chemicals, mold, and humidity, and most days she has to use her inhaler at least once. (R. 63-64). When Claimant stands for a long time, Claimant's circulation problems cause red discoloration and blotchiness on her lower legs. (R. 65). Claimant also has a burning sensation between her ankles and her knees, which is more predominant on her left leg. (R. 65-66). Claimant recently saw a cardiologist because she has chest pain, but the doctor indicated that her chest pain was from anxiety and panic attacks. *Id.*

Claimant's doctors have limited her to lifting no more than five pounds. (R. 66). Claimant testified that her strength is reduced from what it used to be, and she can only stand for 30 minutes at a time. *Id.* Claimant has to move around a lot when she sits, and estimates that she could sit for 30 minutes. *Id.* Claimant has low back pain due to a ballooned disc, but her anti-inflammatory medicine helps with that. (R. 66-67). Claimant limps because of her knee and estimates that she could walk half a block before having to stop and rest. (R. 67). Claimant does some cooking and

8

cleaning at home, but has to stop and rest during the activity. (R. 68).

## C.    Bonnie Lee Casbow's Testimony at the Administrative Hearing

Bonnie Lee Casbow ("Casbow") testified as a witness at the administrative hearing. (R. 70-76). Casbow first met Claimant eight or nine years ago, when Casbow hired Claimant at a food processing plant. (R. 71). Over the past three years, Casbow has visited Claimant every Thursday in Goldsboro for about ten hours each time. (R. 71-72). During these visits, Casbow and Claimant talk, have coffee, and sometimes go out to lunch. (R. 72). Casbow testified that she tries to get Claimant out of the house during the visits. (R. 74).

Casbow testified that Claimant's left knee problems have gotten worse, and that she has observed Claimant limping, having a swollen left leg, and needing to elevate her left leg. (R. 72-73). Casbow observes Claimant having problems with shortness of breath and coughing every time they are together, and has seen Claimant use her inhaler for coughing spells triggered by chemical odors. (R. 73). Casbow testified that Claimant is a smoker. (R. 74). Casbow notices that Claimant's back is hurting when Claimant is walking "clinched over." *Id.* Casbow stated that Claimant is not the girl she met eight or nine years ago, as Claimant is sad, does not want to go places, and has difficulty handling stress. (R. 74-75). Claimant had a panic attack in Casbow's car, which looked like Claimant was having a heart attack and lasted for about thirty minutes. *Id.* Casbow worries that Claimant might hurt herself, and calls almost every day to check on Claimant–if she calls and after four hours has not heard back from Claimant, Casbow will then call Claimant's mother. (R. 75). Casbow testified that Claimant has memory problems and Casbow would not hire Claimant in her present condition. (R. 75-76).

9

**D.    Vocational Expert's Testimony at the Administrative Hearing**

Ted Sawyer testified as a VE at the administrative hearing. (R. 76-86). After the VE's testimony regarding Claimant's past work experience (R. 77-78), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant. The ALJ then asked whether the hypothetical individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform light work with the ability to sit, stand, and walk at least six hours during a typical eight-hour workday, and occasionally engage in postural activities and overhead reaching. (R. 78-79). The individual should avoid concentrated exposure to pulmonary irritants, can perform simple, routine, repetitive tasks, and can occasionally interact with coworkers and supervisors but cannot maintain sustained interaction with the general public. (R. 79). The VE responded that the hypothetical individual would be able to perform Claimant's past relevant work as a production assembler, as that is a light job that does not involve contact with the general public and is unskilled, so it is simple, routine, and repetitive work. *Id.* The VE also stated that based on his 30 years of experience as a rehabilitation counselor as opposed to the Dictionary of Occupational Titles ("DOT"), he would be able to identify other light, unskilled, SVP-2 level positions that meet the hypothetical individual's reaching and handling restrictions. (R. 79-80). Such an individual could work as a laundry classifier (DOT # 361.687-014), sorter, agricultural produce (DOT # 529.687-186), and bakery worker (DOT # 524.687-022). (R. 80). The ALJ then noted that if a sedentary hypothetical were given, all of Claimant's prior sedentary jobs would be precluded since she is limited to unskilled work and those positions were either skilled or semi-skilled. *Id.*

Claimant's attorney then asked if there were any jobs a hypothetical individual of the same

age, education and prior work experience as Claimant, with difficulty concentrating and thinking, who is unable to have any contact with others, and who would miss five or more days of work per month would be able to perform. (R. 83-84). The VE responded that based on his experience, employers will typically allow up to two days per month of absenteeism at the unskilled level, and an employee who would have to miss more work than that would not be employable. (R. 84). The VE stated that when Claimant was working at semi-skilled to low-level skilled jobs, those types of employees typically would not be able to miss more than two days per month and remain employed. *Id.* The VE opined that excluding the absenteeism problems, there would not be a significant number of jobs that an individual who could only rarely interact with others would be able to perform. *Id.*

The VE stated that if the Claimant were limited to lifting no more than five pounds, he was not aware of any jobs that exist in significant numbers that would accommodate that limitation. (R. 85). The VE opined that if the individual in the ALJ's hypothetical had to elevate her legs at the waist level for up to two-thirds of a workday, the identified jobs would be eliminated. *Id.* The VE also stated that an individual who must elevate his or her foot or leg for two-thirds of the work day would not be able to perform either light or sedentary work. (R. 86).

## V. DISCUSSION

### A. The Appeals Council's Consideration of New Evidence

Claimant contends that the Commissioner erred by refusing to consider new and material medical records submitted to the Appeals Council, and the case should be remanded based on *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93 (4th Cir. 1991), *superseded on other grounds by* 20 C.F.R. § 404.1527. Pl.'s Mem. at 29-30. Defendant argues that Claimant has failed

11

to meet her burden of proof to show that remand is appropriate based on new and material evidence. Def.'s Mem. Supp. Def.'s Mot. J. Pleadings [DE-35] ("Def.'s Mem.") at 20-21. Claimant submitted a number of additional exhibits to the Appeals Council, some of which were incorporated into the administrative record. *See* [DE-30-7] at 8-9 (listing the additional exhibits the Appeals Council incorporated into the record). Claimant also contends that she submitted additional exhibits to the Appeals Council that were not incorporated into the record. Pl.'s Mem. at 29 ("See Attachments A through E – all medical records submitted to the Appeals Council but not included in the official Record."); [DE-30-2 through -6].

The Appeals Council must consider evidence submitted by a claimant with his or her request for review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins*, 953 F.2d at 95-96; 20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1) ("The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision."). Evidence is new if it is not duplicative or cumulative, and material if there is a "reasonable possibility that the new evidence would have changed the outcome of the case." *Wilkins*, 953 F.2d at 96; *see also Nance v. Astrue*, No. 7:10-CV-218-FL, 2011 WL 3899754, at *4 (E.D.N.C. Sept. 20, 2011) (unpublished) (explaining that at this stage, Claimant bears the burden of demonstrating that additional evidence is new, material, and relates to the time period before the ALJ's decision) (citations omitted), *adopted by* 2011 WL 4888868 (E.D.N.C. Oct. 13, 2011). "[T]he Appeals Council must consider new and material evidence relating to that period prior to the ALJ decision in determining whether to grant review, even though it may ultimately decline review." *Id.* at 95. The Appeals Council need not,

12

however, review nor consider new evidence that relates only to a time period after the ALJ issues her decision. *See* 20 C.F.R. § 416.1476(b)(1) (stating that, on review, "[i]f [a claimant] submit[s] evidence which does not relate to the period on or before the date of the [ALJ] hearing decision, the Appeals Council will return the additional evidence to [the claimant] with an explanation as to why it did not accept the additional evidence and will advise [the claimant] of [his/her] right to file a new application."). Additionally, the Appeals Council does not need to explain its reason for denying review of an ALJ's decision. *Meyer v. Astrue*, 662 F. 3d 700, 702 (4th Cir. 2011).

In this case, the relevant time period extends from July 1, 2009 (Claimant's alleged disability onset date) to January 14, 2013 (the date of the ALJ's decision).

### 1.    Evidence Incorporated into the Record

The Appeals Council incorporated the following additional evidence into the record: (1) representative correspondence dated April 19, 2013, requesting an extension of time (R. 299-300); (2) representative correspondence dated May 20, 2013 requesting a second extension of time (R. 301); (3) North Carolina Medical Board License Information for Vellore Ramaswamy Sriraman, M.D. (R. 302-03); (4) North Carolina Medical Board License Information for Kuliakanda Chengappa, M.D. (R. 304-05); (5) representative correspondence dated July 5, 2013, requesting that the Appeals Council re-open its determination (R. 306-08); (6) a representative brief dated July 6, 2013 (R. 309-30); (7) representative correspondence dated July 26, 2013, requesting re-opening (R. 331-32); (8) job description–assembler (R. 333-37); (9) treatment records from Waynesboro Family Clinic dated August 31, 2012 (R. 824); (10) treatment records from Goldsboro Orthopedics dating from October 2, 2012 to December 10, 2012 (R. 825-29); and (11) a medical source statement from Katherine Walls, LCSW, dated July 23, 2013 (R. 830-32). Where the Appeals Council incorporates

13

additional evidence in to the record and declines review, [DE-30-7] at 3, the reviewing court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [ALJ's] findings." *Wilkins*, 953 F.2d at 96.

As an initial matter, Claimant makes no argument as to whether any of the exhibits presented to the Appeals Council are new, material, or relevant to the time period in question beyond a conclusory allegation. *See Nance*, 2011 WL 3899754, at *4 (explaining that Claimant bears this burden). Claimant simply argues that as the Appeals Council did not consider the new and material evidence, the submission of new records requires remand for a review of the entire record. Pl.'s Mem. at 29.

In *Shamlee v. Astrue*, the court considered whether submission of additional lab reports and a questionnaire completed by the claimant's treating physician warranted review by the Appeals Council. No. 2:09-CV-290, 2010 WL 3187643, at *10-12 (E.D. Va. May 28, 2010) (unpublished), *adopted by* 2010 WL 3187609 (E.D. Va. Aug. 11, 2010). The *Shamlee* court clarified that new evidence means "evidence not in existence, nor available" at the time of the ALJ's decision. *Id.* at *10 (citing *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997)). The court determined that the Appeals Council did not err in declining review as the claimant failed "to make little more than a conclusory argument that the additional pages are new and material." *Id.* at *11. Further, the court was particularly concerned with the availability of the evidence at the time of the ALJ's decision. *Id.* ("Even if new, was not that information available at the time of the ALJ's opinion?").

Here, similarly, Claimant makes no specific arguments as to how the additional evidence is new, material, or relevant to the time period in question. Pl.'s Mem. at 29-30. Initially, all of the representative correspondence and the representative brief were properly considered by the Appeals

14

Council, as the correspondence seeks additional time to addresses procedural issues, and the representative brief is a legal argument prepared by Claimant's attorney. The North Carolina Medical Board License information for both Dr. Sriraman and Dr. Chengappa, the Waynesboro Family Clinic treatment records, the Goldsboro Orthopedics treatment records, and the job description are not new evidence. The treatment notes both pre-date the January 14, 2013 ALJ decision, and presumably, the license information and job description would have been available prior to the ALJ's decision as well. Accordingly, the undersigned determines that all of this evidence was in existence at the time of the ALJ decision.[4] *Shamlee*, 2010 WL 3187643, at *11.

Katherine Walls' July 23, 2013 medical source statement (R. 830-32) does post-date the January 14, 2013 ALJ decision. However, in the statement, Walls notes that she is writing "to clarify the facts relating to references made in the Social Security decision. Those references–to my treatment notes–were unfortunately taken out of context." (R. 831). Walls goes on to state that Claimant "has made very minimal improvements during the period in which she has received extensive psychiatric treatment. As noted above, she requires ongoing treatment based on the severity of her depression and anxiety–and to ensure her safety." (R. 832). Accordingly, this evidence is not new because it is cumulative and derivative of Walls' existing treatment notes previously contained in the record and considered by the ALJ. *Wilkins*, 953 F.2d at 96; *Saunders v. Colvin*, No. 5:12-CV-775-D, 2014 WL 1057024, at *7 (E.D.N.C. Mar. 17, 2014) (unpublished) (determining that a mental impairment questionnaire submitted to the Appeals Council was not new

---

[4] Claimant did not begin seeing Dr. Chengappa until after the date of the ALJ's decision, but as discussed below, the Appeals Council properly discounted Dr. Chengappa's treatment notes and medical source statement because they did not relate to the period in question [DE-30-3, -5]. Accordingly, Dr. Chengappa's license information is also immaterial.

because the doctor based her questionnaire responses on her earlier treatment of the claimant, and those treatment notes were already contained in the record and considered by the ALJ).

Here, substantial evidence supports the decision of the Appeals Council to deny review of Claimant's case, even after considering the additional evidence submitted by Claimant and incorporated into the record by the Appeals Council, and Claimant has failed to meet her burden of proving that the additional evidence is new, material, and relevant to the time period at issue.

### 2.    Evidence Returned to Claimant

The Appeals Council returned several evidentiary items to Claimant, noting that the ALJ "decided your case through January 14, 2013. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before January 14, 2013." [DE-30-7] at 3. This evidence includes:

> treatment records from Goldsboro Counseling Center covering the period from January 22, 2013 through June 20, 2013 (16 pages) [DE-30-5] at 5-24; a psychiatric evaluation completed by K.M. Chengappa, M.D. dated July 16, 2013 (3 pages) [DE-30-5][5] at 2-4; Medical Source Statement completed by K.M. Chengappa, M.D. on July 16, 2013 (11 pages) [DE-30-3] at 2-11; treatment records from Wayne Memorial Hospital covering the period from March 22, 2013 through April 8, 2013 (10 pages); Wayne Health Medical Clinic treatment records dated between March 13-15 and April 8, 2013 (9 pages) [DE-30-6] at 2-16; and a treatment note from Goldsboro Orthopedics dated February 7, 2013 (1 page).

[DE-30-7] at 3. Some of this evidence was attached to Claimant's Memorandum. *See* [DE-30-1 through -8]. Claimant also lists the following exhibits as submitted to the Appeals Council: (1) Dr. Sriraman's North Carolina Medical Board Credentials, (2) Dr. Chengappa's North Carolina Medical Board Credentials, and (3) Dr. Jimenez's North Carolina Medical Board Credentials. [DE-30-1].

---

[5] Dr. Chengappa's treatment notes (from these psychiatric evaluations) are actually dated February 27, 2013, and March 27, 2013. [DE-30-5] at 2-3.

However, as discussed above, the Appeals Council considered the license information for Drs. Sriraman and Chengappa, and incorporated that information into the record. (R. 302-05). Dr. Jimenez treated Claimant prior to the ALJ's decision, and Claimant makes no argument as to why Dr. Jimenez's license credentials were unavailable prior to the ALJ's decision. The undersigned thus determines that Dr. Jimenez's license credentials are not new evidence and the Appeals Council did not err in declining to consider this information. *Shamlee*, 2010 WL 3187643, at *11.

As to Dr. Chengappa's treatment records and medical source statement, Claimant argues that "the original Medical Source Statements by Dr. Sriraman and Katherine Walls are hereby bolstered by the opinion rendered by the new treating psychiatrist Chengappa." Pl.'s Mem. at 22. However, Dr. Chengappa's treatment notes are dated February 27, 2013, and March 27, 2013, and Dr. Chengappa's medical source statement is dated July 16, 2013 [DE-30-3, -5]. Dr. Chengappa did not begin treating Claimant until more than a month had passed after the ALJ's January 14, 2013 decision, and his medical source statement is dated six months after the ALJ's decision. Both the treatment notes and the medical source statement address Claimant's condition at the time of treatment. [DE-30-3, -5]. For example, in his medical source statement, Dr. Chengappa notes that Claimant's current Global Assessment of Functioning ("GAF") score is 47. [DE-30-3] at 2. As such, this evidence does not relate to Claimant's condition prior to the ALJ's decision. *Price v. Colvin*, No. 5:12-CV-716-FL, 2014 WL 29457, at * 10 (E.D.N.C. Jan. 3, 2014) (unpublished) (adopting memorandum and recommendation determining that additional evidence was not relevant to the time period at issue because the new evidence, obtained five weeks after the ALJ's decision, simply reflected the claimant's condition at the time of testing) (citations omitted). To the extent that Claimant argues that Dr. Chengappa's opinion bolsters opinions rendered by Dr. Sriraman and

17

Katherine Walls that were already in the record, this evidence is not new as it is duplicative and cumulative. *Wilkins*, 953 F.2d at 96; *Brittain v. Sullivan*, No. 91-1132, 1992 WL 44817, at *5 (4th Cir. Mar. 11, 1992, revised Apr. 2, 1992) (unpublished) (concluding that evidence presented in a supplemental report was not new where it was "consistent with all prior testimony" and "shows no conclusions that were not already expressed by other doctors"). Finally, there is no reasonable probability that Dr. Chengappa's treating notes and medical source statement would have changed the ALJ's determination, where Dr. Chengappa's findings are largely cumulative of other evidence in the record describing Claimant's depression. *Price*, 2014 WL 29457, at * 10.

Further, Claimant again makes no argument as to whether any of the remaining exhibits presented to the Appeals Council and returned to Claimant are new, material, or relevant to the time period in question beyond a conclusory allegation. *See Nance*, 2011 WL 3899754, at *4 (explaining that Claimant bears this burden); *accord Shamlee*, 2010 WL 3187643, at *11 (recommending that claimant's argument be denied where she "failed to show that the additional evidence was new and material"). Simply labeling this evidence "new and material" does not suffice to meet Claimant's burden here. *Id.*

Accordingly, the undersigned determines that Claimant has failed to meet her burden of showing that the additional evidence is new, material, and relevant to warrant review by the Appeals Council, and further, the Appeals Council did not err by declining to consider the evidence and explaining to Claimant that the evidence relates to a later time and does not impact whether Claimant was disabled prior to the date of the ALJ's decision.

**B.     The ALJ's Assessment of the Medical Opinion Evidence**

Claimant contends that the ALJ erred in assessing the medical opinion evidence. Pl.'s Mem.

18

at 15-18, 22-27. Defendant argues that the ALJ's consideration of the medical opinion evidence is supported by substantial evidence. Def.'s Mem. at 9-18. The undersigned will address Claimant's specific arguments as to the medical opinion evidence in turn.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c); 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1); 416.927(c)(1). More weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* §§ 404.1527(c)(2); 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all the medical opinions of record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, (5) whether the physician is

19

a specialist, and (6) any other relevant factors. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citation omitted); *Ware v. Astrue*, No. 5:11-CV-446-D, 2012 WL 6645000, at *2 (E.D.N.C. Dec. 20, 2012) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)). The ALJ is not required, however, to discuss all of these factors. *Ware*, 2012 WL 6645000, at *2 (citing *Oldham v. Astrue*, 509 F. 3d 1254, 1258 (10th Cir. 2007); *Munson v. Astrue*, No. 5:08-CV-110-D(3), 2008 WL 5190490, at *3 (E.D.N.C. Dec. 8, 2008) (unpublished)). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), she must nevertheless explain the weight afforded such opinions. *See* S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8.

Medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis, and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2). "Only those statements . . . that reflect judgments regarding a claimant's prognosis or limitations, or the severity of symptoms," and not those which merely report subjective complaints of the claimant's pain, constitute medical opinions as defined in the regulations. *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5366967, at *11 (E.D.N.C. Aug. 30, 2013) (unpublished) (citations omitted), *adopted by* 2013 WL 5350870 (E.D.N.C. Sept. 24, 2013).

The regulations define "acceptable medical sources" as licensed physicians, licensed or

certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. §§ 404.1513(a), 416.913(a). S.S.R. 06-03p provides that "only 'acceptable medical sources' can give us medical opinions" or "be considered treating sources . . . whose medical opinions may be entitled to controlling weight." 2006 WL 2329939, at *2 (Aug. 9, 2006) (citing 20 C.F.R. §§ 404.1527(a)(2), (d); 416.927(a)(2), (d)). Opinions from other medical sources who are not acceptable medical sources, in contrast, are entitled to "significantly less weight." *Craig*, 76 F.3d at 590; 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). Other medical sources include "nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists." S.S.R. 06-03p, 2006 WL 2329939, at *2; 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). The Social Security Administration recognizes the importance of other medical sources, by stating that these sources "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." S.S.R. 06-03p, 2006 WL 2329939, at *3. Evidence from other medical sources may be used "to show the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work . . . ." 20 C.F.R. §§ 404.1513(d), 416.913(d). Thus, while opinions from other medical sources must be weighed and considered by the ALJ, they are not "acceptable medical sources" as defined in 20 C.F.R. §§ 404.1513(a) and 416.913(a) and cannot be afforded controlling weight. S.S.R. 06-03p, 2006 WL 2329939, at *2.

### 1.    Dr. Sriraman

Claimant contends that the ALJ failed to give controlling weight to the opinion of Claimant's

21

treating psychiatrist, Dr. Sriraman, as reflected in a Medical Source Statement. Pl.'s Mem. at 15-16. Further, Claimant argues that the ALJ failed to consider the requisite factors in determining whether to give Dr. Sriraman's opinion "substantial weight," and "failed to set forth the appropriate or sufficient reasons for the weight assigned to Dr. Sriraman's opinion." *Id.* at 17-18. Defendant responds that the ALJ properly did not afford controlling weight to Dr. Sriraman's opinion because the opinion lacked support and was inconsistent with other evidence. Def.'s Mem. at 11-13.

Claimant received mental health treatment at the Waynesboro Family Clinic from November 10, 2010 until June of 2012. (R. 420, 740). Claimant's treatment plan provided that Claimant would see Katherine Walls, a licensed clinical social worker ("LCSW") and therapist, weekly for individual therapy "focused on understanding mental illness and learning new coping skills" and Dr. Sriraman, a psychiatrist, for medication management. (R. 431). Dr. Sriraman's treatment notes reflect that he saw Claimant no more than once a month. *See* (R. 439) (treatment note dated December 3, 2010, setting Claimant's next appointment for a month out); (R. 438) (treatment note dated January 3, 2011, setting Claimant's next appointment for two months out); (R. 435) (treatment note dated May 16, 2011, setting Claimant's next appointment for three months out).

On July 23, 2012, Dr. Sriraman opined that Claimant had marked restriction in activities of daily living, extreme difficulty in maintaining social functioning, deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner, and repeated episodes of deterioration or decompensation in work or work-like settings causing withdrawal from the situation or exacerbation of signs and symptoms. (R. 790-93). The ALJ gave this opinion "little weight" as the treatment notes were inconsistent with and did not support these limitations. (R. 29). Specifically, the ALJ noted that "[t]reatment notes reveal that the claimant was doing odd jobs,

looking for work, visiting relatives, going dancing on weekends and meeting a new man and starting a new relationship." *Id.* Substantial evidence supports the ALJ's decision to afford little weight to Dr. Sriraman's opinion.

Here, the ALJ properly did not afford controlling weight to Dr. Sriraman's opinion where it was contradicted by persuasive evidence of record.[6] *Craig*, 76 F.3d at 590; *Hunter*, 993 F.2d at 35; *Mastro*, 270 F.3d at 178. The ALJ determined that Dr. Sriraman's opinion was inconsistent with Claimant's treatment notes from Waynesboro Family Clinic, which detailed Claimant engaging in activities that would be incompatible with such extreme limitations. (R. 29). The record evidence supports the ALJ's conclusion that during the time period where Claimant was treated by Waynesboro Family Clinic, she was performing odd jobs (R. 407, 409, 412, 417, 725, 733), looking for work (R. 410, 417, 438), visiting relatives (R. 415, 725), going dancing on weekends (R. 713-16, 718-19, 735, 815), and meeting a new man and starting a new relationship (R. 715-16, 731, 734). Claimant's argument that the ALJ took these limited references out of context, Pl.'s Mem. at 28-29, is unpersuasive.

A review of Claimant's treatment notes demonstrates that Claimant consistently reported engaging in these activities. Further, these records also indicate that when Claimant's depression was not well-controlled and she reported more severe symptoms, she was having problems refilling her medication or was not taking the right medication. *Compare* (R. 403) (treatment notes from June 7, 2011, describing how Claimant was not taking her regular depression medication and was feeling down and more on edge and from June 14, 2011 stating "Client still does not have her Lexapro and

---

[6] To the extent that Claimant argues that Dr. Sriraman's opinion is bolstered by Dr. Chengappa's opinion, Pl.'s Mem. at 22, as discussed above, the Appeals Council properly rejected Dr. Chengappa's opinion as it did not relate to the time period prior to the ALJ's decision.

has noticed a huge difference in her mood with the Celexa"), *with* (R. 726) (treatment note from November 9, 2011, stating "Client feels the meds really seem to help with her mood and she has been doing a better job of handling all of her family stress."). The ALJ is not required to explicitly discuss all of the factors laid out in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). *Ware*, 2012 WL 6645000, at *2. Here, the ALJ properly considered the consistency and supportability of Dr. Sriraman's opinion and substantial evidence supports her determination that the opinion was entitled to little weight.

### 2.    Dr. Jimenez and Susan Croom

Claimant contends that the ALJ erred by failing to give controlling weight to the opinion of Dr. Jimenez, one of Claimant's treating physicians. Pl.'s Mem. at 15-16. Claimant also argues that the ALJ erroneously gave little weight to Susan Croom's opinion, simply because Croom is not an acceptable medical source. *Id.* at 22-24. Defendant responds that substantial evidence supports the ALJ's decision to give the opinion co-signed by Croom and Dr. Jimenez little weight, as the opinion lacks support and is inconsistent with other evidence. Def.'s Mem. at 13-15.

Claimant was first treated at the Goldboro Wellness Center by Susan Croom, a nurse practitioner, on April 17, 2012. (R. 761-62). Claimant was also seen by Croom on May 30, 2012 (R. 758-60), and July 12, 2012 (R. 748-56). The record contains a questionnaire signed by Croom on July 20, 2012, and co-signed by Dr. Jimenez on July 24, 2012. (R. 795-800). This questionnaire concludes that Claimant cannot work, as she can sit or stand for up to 30 minutes at a time, but for no more than two hours in a work day, lift no weight on a frequent basis and five pounds occasionally, occasionally bend, stoop, or balance, and would need to frequently elevate her legs during an eight-hour work day. (R. 799). The ALJ discussed this opinion as follows:

24

> [T]his opinion was made after only two visits to the practice. In addition, the undersigned finds that there are no treatment records during this time to support this opinion. This opinion is given little weight as a nurse practitioner is not an acceptable medical source and the opinion is not a medical source statement. More importantly, the record does not support this opinion. Although this opinion is cosigned by a physician, it is noted that there was no evidence that the claimant was seen or followed by this physician.

(R. 30). Substantial evidence supports the ALJ's decision to award little weight to the opinion cosigned by Dr. Jimenez and Croom.

As an initial matter, the Croom/Jimenez opinion states in several places that Claimant is a new patient of the practice. (R. 795-96). The opinion states that Claimant had only been to the practice twice, but the record shows that Claimant had three visits prior to July 20, 2012. (R. 748-56, 758-62, 795). In listing the patient limitations, the author hand wrote "subjective" next to a chart which states that Claimant can stand for 30 minutes at a time, sit for two hours at a time, work no hours per day, lift 5 pounds occasionally and no weight frequently, and cannot tolerate dust, smoke, and fumes. (R. 797). Thus, to the extent that the opinion expressed in the questionnaire is based on these limitations, it is not a medical opinion as defined by the regulations. *Love-Moore*, 2013 WL 5366967, at *11 (holding that statements which merely report subjective complaints of the claimant's pain are not medical opinions as defined by the regulations).

Further, to the extent that any part of the Croom/Jimenez opinion does constitute a medical opinion as defined by the regulations, substantial evidence supports the ALJ's decision to afford the opinion little weight. The record does not show that Claimant was ever treated directly by Dr. Jimenez as the three treatment notes, (R. 748-56, 758-62), were all authored by Croom. Accordingly, there is no record evidence to show that Dr. Jimenez had "an ongoing treatment relationship" with Claimant such that Dr. Jimenez qualified as one of Claimant's treating physicians.

25

20 C.F.R. §§ 404.1502, 416.902. As discussed above, an ALJ is not required to explicitly discuss the factors involved in weighing a medical opinion. *Ware*, 2012 WL 6645000, at *2. Here, the ALJ weighed the opinion in accordance with the regulations and S.S.R. 06-03p, and in doing so considered the supportability and the short treatment relationship between Claimant and the practice. (R. 30); 2006 WL 2329939, at *3. Claimant's treatment notes depict that on April 17, 2012, Claimant had serious swelling in extremities (R. 761-62), on May 30, 2012, Claimant had swelling in her hands and ankles, a hard, painful nodule on the bottom of her left foot, and sought pain medication for her left knee pain (R. 758-60), and on July 12, 2012, Claimant underwent a series of labs (R. 748-56). None of these treatment notes depicts such severe limitations as contained in the co-signed July 2012 opinion. Contrary to Claimant's contention, the ALJ did not discount the opinion simply because Susan Croom is a nurse practitioner and not an acceptable medical source; rather, the ALJ gave good reasons for discounting the opinion based on its lack of support and the short treatment relationship. Additionally, the record does not demonstrate that Dr. Jimenez had an ongoing treatment relationship with Claimant in order to be considered a treating physician–even if this were the case, the ALJ gave good reasons, supported by the record, for affording the opinion lesser weight. Accordingly, substantial evidence supports the ALJ's decision to afford the Croom/Jimenez opinion little weight.

### 3.    Dr. Meyers

Claimant argues that the ALJ erred by "adopting" the state agency mental RFC assessment by non-examining psychologist Dr. Meyers and failing to explain the weight given to the opinion, and by giving the Meyers opinion more weight than the Sriraman opinion, which was rendered by one of Claimant's treating physicians. Pl.'s Mem. at 24-25. Defendant responds that the ALJ's

decision shows that she gave the Meyers opinion great weight, and properly gave more weight to Dr.

Meyers' opinion where it was supported by the record evidence than to Dr. Sriraman's opinion

which was inconsistent and lacked support. Def.'s Mem. at 16-17.

> The ALJ discussed the Meyers opinion as follows:

> In a Psychiatric Review Technique Form (PRTR) completed on July 7, 201, [sic] state psychological consultant James Meyers, Psy.D., found that the claimant had the following functional limitations as a result of her impairments: mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and insufficient evidence of episodes of decompensation. Dr. Meyers also completed a mental health residual functional capacity (MRFC) assessment in which he concluded that the claimant could perform simple routine and repetitive tasks . . . .

> The [ALJ] has considered the state agency [MRFC] assessment, and adopts it because it gives sufficient consideration to the claimant's impairments and limitations arising therefrom, and takes into account the objective medical evidence.

(R. 30). The PRTR is repeated twice in the record, (R. 125-26, 140-41), as is the MRFC assessment

(R. 129-32, 144-47). Substantial evidence supports the ALJ's assessment of the Meyers opinion.

Claimant argues that the ALJ erred by stating that she "adopted" the Meyers opinion, and

instead, the ALJ "is actually required to describe the specific amount of weight given to the opinion."

Pl.'s Mem. at 24. The regulations provide that unless the ALJ affords controlling weight to an

opinion by a treating source, she "must explain in the decision the weight given to the opinions of

a State agency medical or psychological consultant . . . as the [ALJ] must do for any opinions from

treating sources, nontreating sources, and other nonexamining sources who do not work for us." 20

C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii). The ALJ's decision "must be sufficiently specific

to make clear to any subsequent reviewers the weight the [ALJ] gave to the . . . medical opinion and

the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (discussing the weight afforded

to treating source opinions). Where an ALJ fails to explicitly describe the weight afforded a medical opinion, that failure is harmless error "so long as the weight given to the opinion is discernible from the decision and any grounds for discounting it are reasonably articulated." *Bryant v. Colvin*, No. 5:11-CV-648-D, 2013 WL 3455736, *5 (E.D.N.C. July 9, 2013) (unpublished) (citations and quotations omitted). Here, the ALJ stated that she adopted Dr. Meyers' MRFC assessment and specifically referenced his conclusion that Claimant could perform simple, routine, and repetitive tasks. (R. 30). In the RFC determination, the ALJ limited Claimant to "simple, routine, [and] repetitive tasks." (R. 25). Meyers also opined in the MRFC assessment that Claimant was moderately limited in her ability to interact appropriately with the general public and to get along with coworkers or peers. (R. 131, 146). The ALJ's RFC determination limits Claimant to "occasional interaction with coworkers and supervisors" and no "sustained interaction with the general public." (R. 25). The ALJ's statement that she "adopted" Dr. Meyers' MRFC assessment, coupled with the corresponding RFC determination, which includes limitations identified by Dr. Meyers, is "sufficiently specific to make clear to any subsequent reviewers the weight" the ALJ afforded Dr. Meyers' opinion and the reasons for that weight. S.S.R. 96-2p, 1996 WL 374188, at *5. Accordingly, the ALJ did not err by stating that she "adopted" Dr. Meyers' opinion.

Claimant also argues that the ALJ erred by giving more weight to the opinion of Dr. Meyers, a non-examining state agency psychologist, than to Dr. Sriraman, Claimant's treating psychiatrist. Pl.'s Mem. at 24-25. Claimant's argument misstates the applicable standard. As a general rule, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. 20 C.F.R. §§ 404.1527(c)(1); 416.927(c)(1). However, the ALJ is not required to give more weight to the opinion of an examining source such as a treating physician over

28

a non-examining consultant in every circumstance. "The testimony of a non-examining physician can be relied upon when it is consistent with the record." *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986) (citing *Kyle v. Cohen*, 449 F.2d 489, 482 (4th Cir. 1971)). When the record supports the non-examining source's opinion, the ALJ may properly afford it more weight than an opinion from a treating source which has properly been discredited. *Dear v. Astrue*, No. 4:10-CV-95-D, 2011 WL 4381742, at *5 (E.D.N.C. Sept. 20, 2011) (unpublished) (upholding an ALJ's decision to afford more weight to the opinions of a non-examining source where those opinions were "consistent with the longitudinal medical record" and where the ALJ properly discounted the treating physician's opinion that was not supported and was inconsistent with the medical record) (citations omitted).

Here, as discussed above, the ALJ properly afforded little weight to Dr. Sriraman's opinion because that opinion lacked support and was inconsistent with the medical record evidence. The record evidence supports the ALJ's reasons for adopting Dr. Meyers' opinion–the opinion took into account Claimant's impairments and limitations, as well as the objective medical evidence. *Compare* (R. 126) (Dr. Meyers states in the PRTF that Claimant's mental problems are better controlled with medication), *with* (R. 731, 734) (treatment notes depicting Claimant responding well to her depression medication). Accordingly, substantial evidence supports the ALJ's decision to afford more weight to the Meyers opinion than to the opinion of Claimant's treating psychiatrist.

### 4. Dr. Poole

Claimant alleges that the ALJ erred by failing to consider the opinion by Dr. Poole, a consultative examiner, as Dr. Poole's opinion bolsters the opinions of Dr. Sriraman and Katherine Walls. Pl.'s Mem. at 26-27. Defendant responds that any error in failing to discuss Dr. Poole's opinion is harmless, as the ALJ's RFC assessment is consistent with, and in some ways, more

29

restrictive than Dr. Poole's opinion. Def.'s Mem. at 17-18.

Dr. Poole, a licensed psychologist, performed a consultative psychological evaluation of Claimant on February 11, 2011. (R. 338-42). As a result of the evaluation, Dr. Poole stated that Claimant

> appeared able to understand, retain and follow instructions. She appeared able to sustain attention to perform a simple repetitive task. She appears to have developed adequate social skills that would allow her to relate well to fellow workers and employers. In terms of mental functioning alone, and based on a fairly long work history, she appears capable of tolerating the stress and pressures associated with day-to-day work activity.

(R. 341). The ALJ did not weigh Dr. Poole's opinion regarding Claimant's mental functional limitations (R. 26-30), and this was error. However, such error was plainly harmless because, contrary to Claimant's arguments, consideration of Dr. Poole's opinion would not result in a favorable determination for Claimant and the opinion does not bolster the opinions of Dr. Sriraman and Katherine Walls.

"In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore*, 2013 WL 5350870, at *2 (citing *Hill v. Astrue*, 698 F.3d 1153, 1159-60 (9th Cir. 2012); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747, 750 (6th Cir. 2007); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006)). However, "[i]n some cases, the failure of an ALJ to explicitly state the weight given to that opinion constitutes harmless error, so long as the weight given to the opinion is discernible from the decision and any grounds for discounting it are reasonably articulated." *Bryant*, 2013 WL 3455736, at *5 (citations and quotations omitted). Here, as discussed above, the ALJ adopted the opinion of Dr. Meyers, who stated that the evaluation performed by Dr. Poole "is credible and is given great

weight." (R. 126, 141). Dr. Meyers relied on Dr. Poole's consultative evaluation in formulating his opinions about Claimant's limitations.

Claimant argues that Dr. Poole's opinion bolsters the opinions of Dr. Sriraman and Katherine Walls, as Dr. Poole diagnosed Claimant with "Major Depressive Disorder and Generalized Anxiety Disorder, as well as Dependent Personality Disorder (Rule Out)." Pl.'s Mem. at 26. However, Dr. Poole ultimately concluded that Claimant was able to work (R. 341), which conflicts with the Sriraman and Walls opinions (R. 738, 785-88, 790-93). Further, the RFC set out by the ALJ is more restrictive than the limitations identified by Dr. Poole. Dr. Poole opined that Claimant "appears to have developed adequate social skills that would allow her to relate well to fellow workers and employers." (R. 341). In the RFC, however, the ALJ limited Claimant to occasional interaction with coworkers and supervisors, and no sustained interaction with the general public. (R. 25).

Dr. Poole's opinion does not support a finding that Claimant is disabled and further consideration of Dr. Poole's opinion would not have altered the ALJ's ultimate decision. *See Love-Moore*, 2013 WL 5350870, at *2 (holding that an ALJ's failure to consider a medical opinion was harmless where such consideration would not have altered the ALJ's conclusion), *aff'd sub nom., Moore v. Colvin*, 584 F. App'x 155 (4th Cir. 2014). Additionally, further consideration of Dr. Poole's opinion would not have changed the ALJ's evaluation of the Walls and Sriraman opinions, as Dr. Poole's opinion conflicted with those opinions, rather than bolstering them. Accordingly, the ALJ's failure to assign a specific weight to Dr. Poole's February 11, 2011 opinion was harmless error.

### 5. Ann King

Claimant argues that the ALJ erred by giving little weight to the opinions of Ann King, a

31

nurse practitioner, simply because she is not an acceptable medical source. Pl.'s Mem. at 22-24.

Defendant responds that the ALJ properly afforded little weight to King's opinion because it lacked

support. Def.'s Mem. at 15-16.

The record reflects that Claimant was treated at WATCH Mobile Medical Unit from

February 2009 until February 2012. (R. 370-96; 694-704). Ann King, a nurse practitioner, was part

of this treatment team and rendered two opinions: a letter dated September 14, 2011, where King

stated that Claimant's constant pain and anxiety prevent her from doing more than basic activities

of daily living, Claimant requires frequent rest periods and has to change positions often, is unable

to get out of bed some days, and King does not believe that Claimant will improve to the point of

being able to work full time (R. 606); and a medical statement dated July 7, 2011, where King

assessed Claimant as being able to stand for 15 minutes at a time, sit for 30 minutes at a time, work

two hours per day, and lift five pounds occasionally and frequently (R. 687-93). The ALJ discussed

these opinions, stating that

> the claimant's course of treatment for her physical problems has been minimal.
> There are narrative statements, which reflect deterioration but these do not match up
> to the treatment notes in order to support this opinion. This opinion is given little
> weight as a nurse practitioner is not an acceptable medical source and the opinion is
> not a medical source statement. More importantly, the record does not support this
> opinion.

(R. 27). Substantial evidence supports the ALJ's consideration of the King opinions.

Claimant's argument that the ALJ afforded little weight to the King opinions simply because

King is not an acceptable medical source, Pl.'s Mem. at 22-24, is without merit. In accordance with

S.S.R. 06-03p, the ALJ weighed the King opinions. 2006 WL 2329939, at *3. While the ALJ is not

required to explicitly discuss all the factors involved in weighing a medical opinion, *Ware*, 2012 WL

32

6645000, at *2, here the ALJ considered the consistency and supportability of the King opinions. The record evidence supports the ALJ's stated reasons for giving the King opinions little weight. As discussed by the ALJ, the record shows that Claimant's narrative statements show deterioration but do not match up to treatment notes reflecting that Claimant's course of treatment for her physical problems was minimal. *Compare* (R. 373) (treatment note from March 3, 2009 depicting Claimant walking every day); (R. 379) (treatment note from June 4, 2010 depicting Claimant gaining weight because of fluid retention, having increased blood pressure and trouble sleeping); (R. 384) (treatment note from February 14, 2011, where Claimant reports pain in her left knee with prolonged standing); (R. 694) (treatment note from August 16, 2011 where Claimant reported chronic pain in left knee, cramps in left leg, limited range of motion with knee pain); (R. 696) (treatment note from November 21, 2011 where Claimant complained of cramps in both legs since she has been taking Lasix); (R. 698) (treatment note from December 19, 2011 where Claimant rated her daily pain as a seven out of ten), *with* (R. 373 )(treatment notes from March 31, 2001 and May 18, 2009 where Claimant was advised to eat better and stop smoking)); (R. 385 (treatment note from May 6, 2011 instructing Claimant to treat her left knee pain with rest and ice); (R. 386) (treatment note from June 3, 2011 where Claimant did not need a refill for her pain medication because she was trying not to use it); (R. 697) (treatment note from November 21, 2011 where Claimant was advised to walk daily and apply ice to her knee after exercise); (R. 698) (treatment notes from December 19, 2011 and January 16, 2012 where Claimant reported working out at the YMCA);(R. 700) (treatment note from February 20, 2012 where Claimant reported using her rescue inhaler more often because she was not taking her Symbicort as prescribed). Accordingly, substantial evidence supports the ALJ's decision to afford the King opinions little weight.

33

## 6.    Katherine Walls

Claimant argues that the ALJ erred by giving little weight to the opinions of Katherine Walls,

LCSW, simply because she is not an acceptable medical source. Pl.'s Mem. at 22-24. Defendant

responds that the ALJ properly afforded little weight to Walls' opinions because they lacked support.

Def.'s Mem. at 15-16.

The record contains three opinions rendered by Walls: a letter dated October 6, 2011 where

Walls described working with Claimant weekly since November 2010 for Claimant's depression and

anxiety issues, stated that Claimant would like to work and had been trying to find a job, and opined

that Claimant could not work and would not improve enough to manage a full-time job (R. 406); a

letter dated May 1, 2012 where Walls described how Claimant had deteriorated since the October

2011 letter due to medical issues and financial stressors and opined that Claimant would greatly

benefit from disability since she was unable to work (R. 738); and a medical statement dated July

17, 2012 where Walls described Claimant as having marked restriction in activities of daily living,

extreme difficulty maintaining social functioning, deficiencies of concentration, persistence, or pace

resulting in frequent failure to complete tasks in a timely manner and repeated episodes of

deterioration or decompensation (R. 785-88). As to the October 6, 2011 letter, the ALJ stated that

> the opinion of Ms. Walls, a licensed social worker, is given little weight, as it is not
> supported by the treatment notes for the claimant. It is noted that the claimant's
> symptoms lessened with time, she quit biting her nails and she reported good
> response to her medications. The therapy notes reflect her romantic struggles,
> conflict with her mother and step dad (who she moved in with) and frustration over
> money. There were not more serious depressive symptoms noted. This opinion is
> given little weight as a social worker is not an acceptable medical source and the
> opinion is not a medical source statement. More importantly, the record does not
> support this opinion.

(R. 28). As to the May 1, 2012 and July 17, 2012 opinions, the ALJ stated that

34

the opinion of Ms. Walls, a licensed social worker, is given little weight, as it is not supported by the treatment notes for the claimant. This opinion is given little weight as a social worker is not an acceptable medical source and the opinion is not a medical source statement. More importantly, the record does not support this opinion.

(R. 29). Substantial evidence supports the ALJ's decision to afford little weight to the Walls opinions.

Claimant's argument that the ALJ afforded little weight to the Walls opinions simply because Walls is not an acceptable medical source, Pl.'s Mem. at 22-24, is without merit.[7] In accordance with S.S.R. 06-03p, the ALJ weighed the Walls opinions. 2006 WL 2329939, at *3. While the ALJ is not required to explicitly discuss all the factors involved in weighing a medical opinion, *Ware*, 2012 WL 6645000, at *2, here the ALJ considered the consistency and supportability of the Walls opinions. The record evidence supports the ALJ's stated reasons for giving the Walls opinions little weight. As discussed by the ALJ, the record shows that Claimant's symptoms lessened with time (R. 411, 416), Claimant stopped biting her nails (R. 411), Claimant had good responses to her medications (R. 731, 734), and Claimant typically reported relationship and family struggles (R. 413, 418) or frustrations over money problems (R. 415, 733). When Claimant did report suicidal feelings and serious depressive symptoms (R. 729-32), this was in response to issues with her depression medication, and Claimant's symptoms were resolved by medication changes (R. 725-26). Accordingly, substantial evidence supports the ALJ's decision to afford the Walls opinions little weight.

---

[7] To the extent that Claimant argues that Walls' opinion is bolstered by Dr. Chengappa's opinion, Pl.'s Mem. at 22, as discussed above, the Appeals Council properly rejected Dr. Chengappa's opinion as it did not relate to the time period prior to the ALJ's decision.

35

**C.    The ALJ's Finding that Claimant Could Perform Past Relevant Work**

Claimant argues that the ALJ erred in determining that Claimant could perform her past relevant work as a production assembler, DOT # 706.687-010. Pl.'s Mem. at 20-22. Specifically, Claimant argues that she cannot perform the frequent overhead reaching and occasional stooping required by this position, citing to the opinions of Drs. Ahmed and Jimenez, and Ann King. *Id.* Defendant responds that Claimant misstates Dr. Ahmed's opinion, and notes that the VE addressed the overhead reaching required in this position. Def.'s Mem. at 18-19. Further, Defendant argues that Claimant relies on the opinions of Dr. Jimenez and Ann King that she cannot perform occasional stooping, but the ALJ provided valid reasons, supported by substantial evidence, for affording those opinions little weight. *Id.* at 19-20. Claimant's argument on this issue is without merit.

The DOT provides that the position of production assembler involves frequent reaching. DOT, 706.687-010, 1991 WL 679074 (Jan. 1, 2008). However, the VE discussed how the DOT does not address overhead reaching. In response to the ALJ's hypothetical question limiting the individual to occasional overhead reaching (R. 79), the VE stated:

> I would offer to you, however, that of the list of restrictions, the work involving overhead reaching is not specifically addressed by the [DOT]. It addresses more generic issues of reaching and handling activity. As a rehabilitation counselor over the past 30 years, I have worked with individuals with similar types of . . . limitations and placed individuals in employment and done job analysis. I believe I have the expertise to provide a response to that particular segment of your hypothetical that you posed.

(R. 79-80).

Claimant's argument that Dr. Ahmed limited her to no overhead reaching, Pl.'s Mem. at 20, misstates the limitations identified in Dr. Ahmed's opinion. Dr. Ahmed performed a consultative exam on February 21, 2011. (R. 363-69). Dr. Ahmed opined that Claimant had "decreased range

36

of motion in the right shoulder" but noted that Claimant was "able to grasp hands behind head and behind back with difficulty." (R. 366). Claimant had "[f]orward elevation 0 to 90 degrees, backward elevation 0 to 20 degrees, abduction 0 to 90 degrees, adduction is normal. External rotation 0 to 80 degrees, internal rotation 0 to 70 degrees." *Id.* Thus, while Dr. Ahmed identified that Claimant had decreased range of motion in her right shoulder, nowhere did he state that Claimant was completely unable to use her right shoulder for reaching overhead, as stated by Claimant. *See* (R. 363-69). The ALJ gave Dr. Ahmend's opinion significant weight, noting that it was "based on a personal, thorough examination of the claimant and was consistent with the findings from his examination." (R. 27). The ALJ limited Claimant to only occasional overhead reaching in the RFC determination (R. 25), and included this limitation in a hypothetical to the VE to determine whether Claimant could perform her past work (R. 79).

"An ALJ may rely on a VE's testimony concerning the existence of jobs available in the state and national economies where . . . the VE's testimony is based upon or consistent with the [DOT]." *Ferguson v. Colvin*, No. 7:13-CV-174-D, 2014 WL 3845163, at *5 (E.D.N.C. June 23, 2014) (unpublished); *see Fisher v. Barnhart*, 181 F. App'x 359, 365 (4th Cir. 2006) (unpublished); *Gatling v. Astrue*, No. 2:11-CV-21-FL, 2012 WL 4357013, at *8 (E.D.N.C. Sept. 21, 2012) (unpublished) (citation omitted). "Where, however, the VE's testimony is not supported by or consistent with the [DOT], the ALJ must inquire into and elicit a reasonable explanation for any inconsistency before relying on the VE's testimony." *Id.* (citing *Fisher*, 181 F. App'x at 365). "A VE's experience in job placement or career counseling may provide reasonable explanation for a VE's opinion." *Id.* (citing *Fisher*, 181 F. App'x at 365 (quoting S.S.R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000))).

Here, the VE stated that the DOT does not address overhead reaching, and instead he was

37

basing his testimony on his 30 years of experience as a rehabilitation counselor. (R. 79-80). This was a reasonable explanation for the limitation to occasional overhead reaching, which was not addressed by the DOT. *Ferguson*, 2014 WL 3845163, at *7 (holding that the ALJ properly relied on a VE's testimony concerning limitations to sit and stand options and work absences when the testimony was "based on the VE's knowledge, education, experience and training"). Accordingly, the ALJ here properly relied on the VE's testimony, based on the VE's 30 years of experience as a rehabilitation counselor, that Claimant's past work as a production assembler would accommodate the limitation to only occasional overhead reaching.

Further, Claimant's argument that she is unable to perform the production assembler because she is unable to perform occasional stooping, Pl.'s Mem. at 20, is without merit. The DOT does provide that the position of production assembler involves occasional stooping. DOT, 706.687-010, 1991 WL 679074 (Jan. 1, 2008). However, in support of Claimant's position that she is unable to perform occasional stooping, Claimant relies on the opinions of Dr. Jimenez and Ann King. Pl.'s Mem. at 20. As discussed above, the ALJ properly weighed the medical opinion evidence and substantial evidence supports the ALJ's decision to afford these opinions little weight. Claimant states that "[o]n cross-examination, the [VE] acknowledged that [Claimant] could not perform **any** job with her limitations." Pl.'s Mem. at 20. This argument, essentially re-states Claimant's arguments as to the medical opinion evidence, as the limitations Claimant's attorney posed to the VE on cross-examination were all identified in medical opinions to which the ALJ properly afforded little weight. Pl.'s Mem. at 20-22 (quoting R. 85-86). Again, as discussed above, the ALJ did not err in weighing the medical opinion evidence. Additionally, the ALJ did not err in determining that Claimant could perform her past work as a production assembler.

38

**D.     The ALJ's Failure to Apply the Grids**

Claimant contends that the ALJ erred by failing to apply the Grids. Pl.'s Mem. at 19. Claimant argues that Dr. Jimenez and Ann King limited Claimant to sedentary work, and Rule 201.14 of the Grids directs a finding of disabled based on Claimant's age, education, and lack of transferable skills. *Id.* In response, Defendant argues that the Grids are inapplicable where the ALJ properly concludes a claimant can perform her past relevant work. Def.'s Mem. at 20. Additionally, Defendant argues that Claimant contends she is limited to sedentary work based solely on the opinions of Dr. Jimenez and Ann King. *Id.* According to Defendant, the ALJ properly discounted these opinions and was not required to defer to them in formulating Claimant's RFC. *Id.* Claimant's argument that the ALJ failed to apply the Grids to find Claimant disabled is without merit.

A person is disabled and eligible for DIB or SSI benefits "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). "In determining whether a claimant is disabled, the ALJ follows a sequential five-step process outlined in the Social Security Regulations." *Pass*, 65 F.3d at 1203; 20 C.F.R. §§ 404.1520, 416. 920. At the fourth step, the ALJ considers whether the claimant can perform his past relevant work, and if the claimant can, the ALJ will find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416. 920(a)(4)(iv). At the fifth step, the ALJ considers claimant's RFC, age, education, and work experience, and if the claimant can make an adjustment to other work, the ALJ will find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416. 920(a)(4)(v). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent

39

steps." *Pass*, 65 F.3d at 1203. The burden of proof and production during the first four steps of the inquiry rests with the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.* "[I]f a claimant's nonexertional impairments do not prevent him from performing the full range of work at a given exertional level, the ALJ may rely solely on the grids to satisfy the burden of proof at step five." *Pickett v. Astrue*, No. 7:10-CV-190-D, 2011 WL 4443229, at *8 (E.D.N.C. Sept. 22, 2011) (unpublished) (citing *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987); *Gory v. Schweiker*, 712 F.2d 929, 930-31 (4th Cir. 1983)).

Here, the ALJ concluded at step four that Claimant could perform her past relevant work as a production assembler. (R. 31). Accordingly, having found that Claimant could perform her past relevant work, the ALJ determined that Claimant was not disabled. (R. 31-32). Once the ALJ determined that Claimant was not disabled at step four, the ALJ did not need to advance to step five of the analysis. *Pass*, 65 F.3d at 1203. It is only at step five that the ALJ would utilize the Grids. *See Pickett*, 2011 WL 4443229, at *8 ("the ALJ may rely solely on the grids to satisfy the burden of proof at step five."). Accordingly, Claimant's argument on this issue is without merit.

Further, Claimant's argument that application of the Grids would direct a finding of disability relies on a sedentary RFC. Pl.'s Mem. at 19. To support a sedentary RFC, Claimant notes that both Dr. Jimenez and Ann King limited Claimant to lifting no more than five pounds either occasionally or frequently. *Id.* However, as discussed above, the ALJ properly weighed the medical evidence of record and discounted the opinions of Dr. Jimenez and Ann King. Ultimately, the ALJ determined that Claimant had the RFC to perform light work by relying on credible record evidence. (R. 25). Accordingly, the ALJ did not err by failing to apply Rule 201.14 of the Grids, because it only applies

where the claimant has the RFC to perform sedentary work.

## E.     The ALJ's Credibility Analysis

Claimant argues that the ALJ's finding that Claimant has not required aggressive measures for symptom relief was in error, as the ALJ was penalizing Claimant for not being able to afford specialized medical treatment. Pl.'s Mem. at 27-28. Claimant also argues that her 35-year work history bolsters her credibility. *Id.* at 19-20. Defendant responds that the ALJ's finding regarding Claimant's lack of treatment was only one of several valid reasons the ALJ gave for discounting Claimant's complaints. Def.'s Mem. at 8-9. Defendant also argues that the ALJ properly considered Claimant's work history, and the ALJ provided valid reasons, supported by substantial evidence, for finding Claimant's subjective complaints of pain not entirely credible. *Id.* at 7-8.

It is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."). Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593-94. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996). If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *See Craig*, 76 F.3d at 595. The two-step inquiry takes into account "all available

evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms, and functional restrictions. *Id.*; *see also* 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3); S.S.R. 96-7p, 1996 WL 374186, at *3. The ALJ should also consider a claimant's "prior work record and efforts to work" when analyzing a claimant's credibility. S.S.R. 96-7p, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *See Craig*, 76 F.3d at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at fact value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *3.

### 1.   Claimant's Lack of Aggressive Treatment

Here, the ALJ determined that Claimant's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but found that Claimant was not entirely credible as to the intensity, persistence, and limiting effects of her symptoms.   (R. 26-31). Specifically, the ALJ noted that "the claimant has not required such aggressive measures for symptom relief as use of steroid medication, epidural injections, application of TENS equipment, or enrollment in physical therapy or a pain management program. The treatment regimen, therefore, indicates that the claimant's symptoms are not as intractable as alleged." (R. 30).   Claimant's argument that the ALJ is penalizing Claimant for not being able to afford specialized treatment, Pl.'s Mem. at 27-28, is without merit.

42

The record evidence supports the ALJ's findings that Claimant has not required aggressive treatment for symptom relief. On February 21, 2011, Claimant reported to Dr. Ahmed that she was taking over-the-counter medications for her shoulder pain. (R. 364). However, Claimant had access to prescription pain medication through the WATCH clinic during this time. On June 3, 2011, Claimant was seen at the WATCH clinic and stated that she was trying not to take her prescription pain medication, and she did not need a refill on that day. (R. 386). Further, at the hearing, Claimant testified that she tries not to take her prescription pain medication and is wary of knee replacement surgery because of the recovery. (R. 62). Claimant testified that she tries to treat her knee pain with anti-inflammatory medication, elevation, and ice. *Id.* The ALJ's finding here was not based on Claimant's inability to afford medical treatment, rather, it was based on the record evidence showing that Claimant treated her pain with less aggressive treatment measures even though she had access to prescription medication. *See Cooper v. Colvin*, No. 5:13-CV-473-FL, 2014 WL 5494842, at *11 (Aug. 26, 2014) (determining that the ALJ did not err in finding claimant not fully credible where claimant testified that pain was a constant problem but primarily used over-the-counter medication and did not use his entire prescribed amount of prescription medication), *adopted by* 2014 WL 5489362 (Oct. 30, 2014). Accordingly, the ALJ did not err in finding Claimant not fully credible based on Claimant's lack of aggressive treatment for symptom relief.

## 2.    Claimant's Work History

Claimant cites to *Nanny v. Mathews*, 423 F. Supp. 548, 551 (E.D. Va. 1976) and *Steffanick v. Heckler*, 570 F. Supp. 420, 427 (D. Md. 1983) for the proposition that Claimant's 35-year work history bolsters her credibility. Pl.'s Mem. at 19-20. However, both *Nanny* and *Steffanick* are distinguishable from the instant case. The claimant in *Nanny* worked 19.5 years for one company

43

and six years for another company. 423 F. Supp. at 550. The claimant established a prima facie case of disability, and there was no conflicting evidence to show that claimant was able to work. *Id.* at 552. Ultimately, the court remanded for an award of benefits because substantial evidence did not support the decision that claimant was not disabled. *Id.* In discussing Claimant's credibility, the court noted that "[a] person with such a strong work record should be afforded substantial credibility as a witness to her own work capabilities." *Id.* at 551 (citation omitted). The court concluded it was error to disregard Claimant's subjective testimony about her inability to work for a full work day where it was uncontradicted by the record, and there were uncontradicted medical opinions stating that claimant was disabled. *Id.* at 552.

In *Steffanick*, the claimant had worked for fifteen years as a construction supervisor. 570 F. Supp. at 422. The claimant's subjective complaints of pain were supported by direct, uncontradicted medical evidence such as the need for major surgical procedures. *Id.* at 425-27. The ALJ discounted three treating physicians' opinions that the claimant was disabled without explanation. *Id.* at 426. Further, the ALJ based his decision on his own observations at the hearing that the claimant did not appear to be in pain.[8] *Id.* The court concluded that "the ALJ erred in effectively disregarding all of the [claimant's] uncontradicted evidence on the basis of his limited observations at the supplemental hearing." *Id.* at 427. Again, the court noted that a claimant's testimony as to pain should not be

---

[8] Claimant argues here that the ALJ engaged in similar impermissible "sit and squirm" jurisprudence and substituted her opinion for that of a medical expert. Pl.'s Mem. at 25-26. This case is distinguishable from the "sit and squirm" cases cited by Claimant, and her argument is without merit. The ALJ did state that "the medical evidence and observations by the [ALJ] do not reveal any evidence of a change in motor tone or bulk such as disuse atrophy . . . which might be expected in a person whose activities are markedly restricted due to a debilitating disease process." (R. 31-31). This finding is based on the ALJ's review of the medical evidence, not just the ALJ's observations. Accordingly, this case is distinguishable from cases where the ALJ discounted otherwise uncontradicted medical opinion evidence based solely on his own observations of claimant, *Steffanick*, 570 F. Supp. at 427; *Woods v. Heckler*, 625 F. Supp. 1450, 1454 (W.D. Va. 1986), and from cases where the ALJ did not utilize a VE and testified based on his own knowledge about jobs the claimant could perform, *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

44

disregarded lightly where the claimant has a substantial work record. *Id.*

Here, unlike both *Nanny* and *Steffanick*, there is persuasive evidence of record that Claimant is not disabled. *See, e.g.*, (R. 363-69) (Dr. Ahmed's consultative examination stating that Claimant had a good functional assessment); (R. 125-26, 129-32, 140-41, 144-47) (Dr. Meyers' opinion that Claimant could perform simple, routine, and repetitive tasks and Claimant was only moderately limited in her ability to interact appropriately with the general public and to get along with coworkers or peers). "[A] claimant's work history is only one factor among many to be taken into consideration." *Brown v. Astrue*, No. BPG-09-2327, 2011 WL 1431529, at *7 (D. Md. Apr. 14, 2011) (unpublished) (memorandum opinion determining that the ALJ's assessment of claimant's credibility was supported by substantial evidence where the ALJ considered all available evidence even though the ALJ did not specifically address the claimant's work history). The ALJ explicitly discussed Claimant's work history, distinguishing Claimant's long history of short-term employment from the cases cited by Claimant where the individuals worked steadily and for many years with one employer. (R. 31). Here, the ALJ has considered Claimant's work history as part of the credibility analysis, and substantial evidence supports the ALJ's determination to find Claimant not fully credible.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-29] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-34] be ALLOWED, and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections and seven (7) days

to respond to any objection. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 18th day of February, 2015.

Robert B. Jones, Jr.
United States Magistrate Judge